KEMIRA FIBRES OY, Plaintiff,

v.

UNITED STATES, et al., Defendants.

Slip Op. 94–139.
Court No. 94–07–00405.

United States Court of
International Trade.

Sept. 8, 1994.

Arent Fox Kintner Plotkin & Kahn, Washington, DC (Christine L. Herrell, of counsel), James H. Hulme, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice (Velta A. Melnbrencis, Asst. Director, and Dean L. Grayson, of counsel), Anna Y.M. Park, Attorney–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendants.

## OPINION

TSOUCALAS, Judge:

On July 26, 1994, the Court issued *Kemira Fibres Oy v. United States,* 18 CIT ——, 858 F.Supp. 229, and an accompanying order granting plaintiff's motion for a preliminary injunction enjoining the United States Department of Commerce, International Trade Administration ("Commerce"), from conducting an administrative review for 1993–94 with respect to *Viscose Rayon Staple Fiber From Finland,* 44 Fed.Reg. 17,156 (1979). This injunctive relief was granted pending final judgment in plaintiff's civil action which challenges Commerce's failure to revoke the 1979 antidumping duty order (the "Order") with respect to viscose rayon staple fiber from Finland (the "fiber").

*Kemira Fibres Oy,* Slip Op. 94–120, disposed of the merits of plaintiff's action and stated that, unless facts contradicting or explaining the facts in the decision were sub-

mitted within 10 days of the date the opinion was entered, the Court would deem that it had all of the facts on the case and would issue a declaratory judgment in plaintiff's civil action.

### Background

On March 21, 1979, Commerce issued its finding of dumping with respect to imports of viscose rayon staple fiber from Finland. *See Viscose Rayon Staple Fiber From Finland,* 44 Fed.Reg. at 17,156. Kemira Oy Sateri, the only known exporter of the fiber from Finland to the United States, was the sole respondent. The petitioner in that investigation is no longer a part of the U.S. fiber industry. Kemira Fibres Oy ("Kemira") is Kemira Oy Sateri's corporate successor.

Commerce conducted administrative reviews of the fiber until 1988. No interested party requested administrative review during the next four consecutive anniversary months in 1989, 1990, 1991, and 1992.

On March 1, 1993, the first day of the Finding's fifth anniversary month, Commerce did not publish a notice of intent to revoke the Order as required by 19 C.F.R. § 353.25(d)(4)(i) (1992). Instead, on March 12, 1993, Commerce published a notice soliciting requests for administrative review for the period March 1, 1992, through February 28, 1993. *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review,* 58 Fed.Reg. 13,583 (1993). No interested party requested administrative review by the last day of the fifth anniversary month.

On June 3, 1993, Commerce published a notice of intent to revoke the Finding. *See Rayon Staple Fiber From Finland; Intent to Revoke Antidumping Finding,* 58 Fed. Reg. 31,504 (1993). By letter, dated June 28, 1993, Lenzing Fibers Corporation ("Lenzing") and Courtaulds Fiber Inc. ("Courtaulds"), the only two U.S. domestic producers of rayon staple fiber, objected within the specified time to the proposed revocation. Neither of these parties had responded by the last day of the fifth anniversary month to Commerce's March 12, 1993 solicitation of requests for administrative review. Cour-

taulds was a U.S. producer in 1979. Lenzing is a new entrant in the U.S. fiber industry.

On March 4, 1994, in the sixth anniversary month of the Finding, Commerce solicited requests for administrative review for the period March 1, 1993, through February 28, 1994. *See Anti-dumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review,* 59 Fed.Reg. 10,368 (1994). On March 29, 1994, Lenzing and Courtaulds timely responded, requesting that Commerce conduct an administrative review of Kemira's imports. On March 29, 1994, Commerce published a notice of intent to revoke the Finding and the accompanying Order. *See Intent to Revoke Antidumping Duty Orders and Findings,* 59 Fed.Reg. 14,608 (1994). On April 11, 1994, Lenzing and Courtaulds objected to the proposed revocation.

On April 21, 1994, for the purpose of conducting administrative review of the fiber for 1993–94, Commerce sent Kemira a questionnaire. The initial response due date of June 6, 1994 was subsequently extended to June 28, 1994 and ultimately extended to July 13, 1994.

On May 12, 1994, Commerce published a notice of intent to initiate an administrative review of the fiber for the period March 1, 1993 through February 28, 1994. *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 59 Fed.Reg. 24,683 (1994). On June 23, 1994, Kemira protested Commerce's decision to initiate this review.

On July 13, 1994, Kemira submitted and subsequently withdrew its questionnaire response and filed a motion for a temporary restraining order ("TRO") and a preliminary injunction to enjoin Commerce from conducting an administrative review of the fiber for 1993–94 pending judgment in its civil action which challenged Commerce's failure to revoke the 1979 Order.

The Court granted plaintiff's motion for a TRO on July 13, 1994, and scheduled a hearing on plaintiff's motion for a preliminary injunction. On July 19, 1994, a full hearing was held to determine whether a preliminary injunction should issue. On July 26, 1994, the Court granted plaintiff's motion for in-

junctive relief preliminarily enjoining Commerce from conducting administrative review of the fiber for 1993–94 pending the Court's issuance of a declaratory judgment in plaintiff's civil action.

In *Kemira Fibres Oy*, 18 CIT at ——, 858 F.Supp. at 234, the Court found that no interested party had objected to Commerce's proposed revocation of the 1979 Order or requested administrative review by March 31, 1993, as required by 19 C.F.R. § 353.25(d)(4)(iii). Further, the Court found that the language in paragraph (iii) of § 353.25(d)(4), is mandatory rather than merely directory. *Kemira Fibres Oy*, 18 CIT at ——, 858 F.Supp. at 234. Consequently, the Court found that, on April 1, 1993, Commerce was obliged to revoke the outstanding Order. Thus, the Court reasoned that, on June 3, 1993, Commerce had erroneously solicited objections to its proposed revocation of the Finding and, therefore, Commerce could not properly recognize Lenzing's and Courtaulds' June 28, 1993 objection to the revocation. The Court concluded that, consequently, Commerce should not have commenced administrative review for 1993–94. *Id.* at ——, 858 F.Supp. at 234.

### Discussion

■ Commerce has not responded with information which contradicts or explains the facts on which the Court based its decision in *Kemira Fibres Oy*, Slip Op. 94–120. Instead, Commerce posits an additional argument, grounded in the notice requirements of 19 C.F.R. § 353.25(d)(4)[1], in support of the position that it has authority and a valid basis

for commencing administrative review of the fiber for 1993–94.

The essence of Commerce's argument is that the obligation or right to respond by the last day of the fifth annual anniversary month, to avoid revocation of an antidumping duty order pursuant to paragraph (iii) of 19 C.F.R. § 353.25(d)(4), does not arise unless the notice requirements of paragraphs (i) and (ii) of this regulation have been met. *Defendants' Reply to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Entry of Judgment ("Defendants' Reply")* at 4. Commerce points out that, in the case at bar, it "failed to give any notice of intent to revoke the Finding by March 31, 1993." *Id.* at 2. Commerce deduces that, as it did not give timely notice of its intent to revoke, interested parties were not obligated to object by March 31, 1993 in accordance with paragraph (iii) of § 353.25(d)(4). Commerce claims that interested parties' obligation to object arose on June 3, 1993 when Commerce published a notice of intent to revoke. Commerce further submits that it appropriately refrained from revoking the outstanding order upon receiving a timely objection to this proposed revocation. *Id.* at 3–5.

Commerce claims that, where it has failed to timely publish a notice of intent to revoke an antidumping duty order or finding, the Court's interpretation of paragraph (iii) of 19 C.F.R. § 353.25(d)(4) in Slip Op. 94–120 nullifies the notice requirements of paragraphs (i) and (ii) of this regulation and abrogates the right to object to revocation which is afforded

---

1. **§ 353.25 Revocation of orders; termination of suspended investigation.**
   (d) *Revocation or termination based on changed circumstances....*
   (4)(i) *If for four consecutive annual anniversary months* no interested party has requested an administrative review, under § 353.22(a), of an order or suspended investigation, not later than the first day of the fifth consecutive annual anniversary month, the Secretary will publish in the FEDERAL REGISTER notice of "Intent to Revoke Order" or, if appropriate, "Intent to Terminate Suspended Investigation."
   (ii) Not later than the date of publication of the notice described in paragraph (d)(4)(i) of this section, the Secretary will serve written notice of the intent to revoke or terminate on

each interested party listed on the Department's service list and on any other person which the Secretary has reason to believe is a producer or seller in the United States of the like product.
   (iii) *If by the last day of the fifth annual anniversary month* no interested party objects, or requests an administrative review under § 353.22(a), *the Secretary at that time will conclude that the requirements of paragraph (d)(1)(i) for revocation or termination are met, revoke the order* or terminate the suspended investigation, and publish in the FEDERAL REGISTER the notice described in paragraph (d)(3)(vii) of this section.
   19 C.F.R. § 353.25(d)(4) (1992) (emphasis added).

by paragraph (iii). *Defendants' Statement Explaining or Contradicting Facts Contained in the Court's Opinion of July 26, 1994, and Motion for Dissolution of the Preliminary Injunction and Entry of Judgment for the Defendants* ("Defendants' Statement") at 4.

Commerce asserts that in *Belton Indus., Inc. v. United States,* 16 CIT 175, 797 F.Supp. 1000 (1992), *aff'd,* 6 F.3d 756 (Fed. Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 925, 127 L.Ed.2d 218 (1994) ("*Belton*"), in the analogous context of a countervailing duty regulation pertaining to revocation of outstanding countervailing duty orders, the Court of Appeals for the Federal Circuit placed such great importance upon the notice requirement contained in the regulation that the court invalidated Commerce's revocation of an order where Commerce had failed to give notice of its intent to revoke. *Defendants' Statement* at 4–6. Commerce contends that *Kemira Fibres Oy,* Slip Op. 94–120, conflicts with *Belton. Defendants' Statement* at 4–5.

Commerce claims that according to the Court's interpretation of § 353.25(d)(4) in *Kemira Fibres Oy,* Slip Op. 94–120, "it is the domestic industry, not Commerce, that bears the consequences of Commerce's inadvertent tardiness." *Defendants' Statement* at 9. Commerce submits that "[t]his cannot be the intended effect of the regulation because our trade laws do not 'sacrifice fairness and accuracy for the sake of expediency alone.'" *Id.* (quoting *Koyo Seiko Co. v. United States,* 20 F.3d 1160, 1167 (Fed.Cir.1994)).

Commerce also claims that the Court has overlooked the fact that a new member of a domestic industry need not demonstrate injury in order to benefit from an existing dumping finding or to seek a new investigation of the product which is subject to an existing dumping finding. *Defendants' Statement* at 17–19.

Commerce misinterprets the Court's decision in *Kemira Fibres Oy,* Slip Op. 94–120, to state that, because Commerce failed to publish a notice of intent to revoke the dumping finding on the fiber by March 1, 1993, revocation of the Finding became mandatory and Commerce is required to revoke the Finding.

*Defendants' Statement* at 1–2. The Court, in fact, stated that "no interested party objected to revocation of the Order *or* requested an administrative review by March 31, 1993" as is required by 19 C.F.R. § 353.25(d)(4)(iii). *Kemira Fibres Oy,* 18 CIT at ——, 858 F.Supp. at 234. The Court reasoned that "*the adverse consequence* of no interested party having objected *or* requested an administrative review by the last day of the fifth anniversary month *was that Commerce would revoke the Finding,* therefore, the directive of section 353.25(d)(4)(iii) is mandatory." *Id.* at —— —— ——, 858 F.Supp. at 234. The Court concluded that, "[h]ence, the Secretary was obligated to revoke the Order and no administrative review should have been commenced." *Id.* at ——, 858 F.Supp. at 234. Thus, it is clear that the Court's decision was greatly influenced by the fact that the domestic industry failed to request administrative review by March 31, 1993, the last day of the fifth annual anniversary month of the Finding, as is required by § 353.25(d)(4)(iii).

Each year during the anniversary month of the publication of an antidumping duty order, finding, or suspension of investigation, an interested party may request, in accordance with 19 C.F.R. § 353.22(a) (1992) of the Commerce regulations, that Commerce conduct administrative review of that order, finding, or suspended investigation. *See also* 19 U.S.C. § 1675(a) (1988).

It is by taking advantage of the annual opportunity to request administrative review that an interested party registers its interest in the maintenance of an outstanding finding or order. The passage of these annual opportunities without any expression of interest by a domestic industry is a signal of some import with respect to Commerce's prudence in maintaining outstanding findings and orders.

It is this requirement of some manifestation of interest registered periodically so as to justify maintenance of the order which resounds from the language of § 353.25(d)(4), the so-called "sunset regulation," and which gives this regulation its character.

■ Specifically, paragraph (iii) of this regulation provides that, "[i]f by the last day of the fifth annual anniversary month no interested party objects, or requests an administrative review under § 353.22(a)," the Secretary will conclude that the requirements of paragraph (d)(1)(i) of this section for revocation are met and revoke the order. 19 C.F.R. § 353.25(d)(4)(iii). Paragraph (d)(1)(i) of this section, to which paragraph (iii) makes reference, provides in pertinent part, that the Secretary may revoke an order if the Secretary concludes that the order "no longer is of interest to interested parties." 19 C.F.R. § 353.25(d)(1)(i) (1992). Hence, paragraph (iii) places the domestic industry *on notice* that, when four consecutive anniversary months have passed without any request for administrative review, it must register its interest in an outstanding order by a particular date either through objection to revocation or by requesting administrative review. The ramifications of inaction are that the order is revoked and potentially interested parties are deemed not interested and, therefore, forfeit their right to request administrative review, or in the case where a notice of intent to revoke has been published, their right to object to revocation. "Parties are presumed to know and are required to be cognizant of the governing regulations." *SCM Corp. v. United States*, 595 F.2d 595, 598, 219 Ct.Cl. 459 (1979). Hence, knowledge of the law relevant to the protection of an industry's self-interest is imputed to that industry.

Paragraph (i) provides that where no administrative review has been sought for four consecutive annual anniversary months, the Secretary will, not later than the first day of the fifth anniversary month, publish a notice of intent to revoke the outstanding order. 19 C.F.R. § 353.25(d)(4)(i). Further, paragraph (ii) delineates the process Commerce must follow when it publishes such a notice. 19 C.F.R. § 353.25(d)(4)(ii). However, in the instant case, although no interested party had requested an administrative review for four consecutive annual anniversary months, Commerce failed to publish a notice, on March 1, 1993, of intent to revoke the Order as required by paragraph (i). In point of fact, Commerce published no such notice at any time during the fifth annual anniversary month. Commerce explained to the Court that this failure was due to a "backlog of cases during this period of time" and stated that "[i]nstead, it published the notice on June 3, 1993." *Defendants' Memorandum in Opposition to Plaintiff's Application for a Preliminary Injunction* at 12. Commerce also referred to its failure to publish such a notice as "inadvertent tardiness." *Defendants' Statement* at 9.

However, within the critical fifth consecutive annual anniversary month, for reasons which are unknown to the Court, Commerce took the time to publish, on March 12, 1993, a notice soliciting requests for administrative review for 1992–93. With respect to this choice, the Court can only state that Commerce is in the best position to know the requirements of its own regulations and how best to implement these companion regulations to the antidumping laws in a manner which protects domestic industries.

Further, although no interested party had sought administrative review for four consecutive annual anniversary months and Commerce had solicited requests for such review, no interested party requested administrative review by March 31, 1993 as required by § 353.25(d)(4)(iii). This was the case although, as the anniversary month progressed, it surely must have become apparent that Commerce would not be issuing a notice of intent to revoke the Finding. Nor do the facts indicate that any interested party questioned Commerce's failure to publish such a notice or attempted to impede revocation in any manner. Rather, the domestic industry allowed the period for action to lapse although paragraph (iii) plainly states that the consequence of no interested party objecting or requesting an administrative review under § 353.22(a) is that Commerce "*at that time will conclude that the requirements of paragraph (d)(1)(i) for revocation or termination are met, revoke the order.*" 19 C.F.R. § 353.25(d)(4)(iii) (emphasis added). In this case, the domestic industry must bear the consequence of its own inaction.

Moreover, with regard to the notice requirements of § 353.25(d)(4), Commerce's re-

liance on *Belton* is misplaced. *Belton* is distinguishable from this case because the interested parties in *Belton* received notice, during the fifth anniversary month, of Commerce's intent to revoke so that they could and, in fact, did file timely objections to the proposed revocation. The court in *Belton* never had to evaluate the subject regulation in a context of Commerce having published a solicitation for administrative review in lieu of a notice of intent to revoke and interested parties having failed to respond. Hence, the court in *Belton* considered the issue of notice within quite a different context than is presented here. Therefore, *Belton* is not controlling.

The Court is not impervious to the proposition that notice is fundamental to the opportunity to present timely and proper objections. However, section 353.25(d)(4) does not state that published and written notice of the intent to revoke are a prerequisite to revocation of an antidumping duty order. On the contrary, paragraph (iii) of the regulation, by its terms, plainly states that the Secretary will revoke the order if by the last day of the fifth annual anniversary month no interested party objects *or requests administrative review.* 19 C.F.R. § 353.25(d)(4)(iii) (emphasis added). Moreover, with no notice of intent to revoke issuing, some protection against the harsh results of § 353.25(d)(4)(iii) was afforded to interested parties when Commerce solicited, on March 12, 1993, requests for administrative review.

Commerce advocates an interpretation of § 353.25(d)(4) which—although a domestic industry has established a pattern of disinterest and so long as Commerce has not published any notice of intent to revoke— places no obligation on interested parties to express an interest in maintaining an outstanding antidumping duty finding or order and allows Commerce to extend indefinitely the period during which an antidumping duty order may be outstanding. Such latitude would reduce the restrictive language in the subject regulation to empty rhetoric and would drain the regulation of its character. Hence, the Court is constrained to reject Commerce's interpretation of § 353.25(d)(4) on the facts of this case.

With regard to the issue of injury, the International Trade Commission's ("the Commission") determination of injury, once made, is considered to be ongoing as to an industry, irrespective of subsequent changes in the composition of that industry. The Court did not make any statements to the contrary in *Kemira Fibres Oy,* 18 CIT at ————–————, at 235–36. Upon a new petition for a new anti-dumping investigation Commerce can determine whether the fiber from Finland is being sold in the United States at less than its fair value. If a final affirmative determination as to the existence of sales at less than fair value is made, the Commission may make a final determination as to whether there is injury by reason of the imports. *See* 19 U.S.C. § 1673 (1988).

Commerce has made no argument which would convince the Court to render judgment in defendants' favor.

### Conclusion

It is the language and character of § 353.-25(d)(4) which compel the Court's conclusion. Accordingly, defendants' motion for dissolution of the preliminary injunction and for entry of judgment in defendants' favor is denied. Declaratory judgment is hereby entered in favor of plaintiff, holding that: (1) as no interested party requested an administrative review of the fiber by the last day of the Finding's fifth anniversary month although Commerce solicited requests for administrative review, it was incumbent upon Commerce to conclude that the domestic industry was not interested and to revoke the Order on April 1, 1993. Therefore, (2) Commerce proceeded without authority and without valid basis in commencing an administrative review for March 1, 1993 through February 28, 1994. Consequently, (3) Commerce is now required to: (a) revoke the Order on the fiber, (b) terminate the administrative review of the fiber for 1993–94, and (c) end the suspension of liquidation of entries of Kemira's imports.

A different result would encourage interested parties to be lax in exercising their right to request administrative reviews, would be unjust to the importer who would have to invest in a proceeding which, pursuant to this regulation, it has a right to avoid,

and would ignore the plain language of § 353.25(d)(4)(iii).